**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawna Garlington,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>            Defendant. | No. CV-22-02204-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Shawna Garlington's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Docs. 15, 17, 18), and the Court now rules.

**I.     BACKGROUND**

The issues[1] presented in this appeal are:

1. Whether the Administrative Law Judge ("ALJ") erred by failing to provide clear and convincing reasons supported by substantial evidence in the record for rejecting Plaintiff's symptom testimony.

2. Whether the ALJ erred in rejecting portions of the psychological assessment by Kari Coelho, Psy.D., by failing to provide sufficient explanation supported by substantial evidence.

(Doc. 15 at 1–2).

---

[1] Plaintiff appeals only the ALJ's decision regarding mental impairments. (Doc. 15 at 3).

### A.   Factual Overview

Plaintiff was forty-three years old at the time of the hearing. (Doc. 15 at 2). She has a high school education and reports past work as a "babysitter/child monitor." (*Id.*) Plaintiff filed her application for Supplemental Security Income ("SSI") on September 19, 2019, based on an alleged disability onset date of November 5, 2017. (*Id.*) Plaintiff was last insured on December 31, 2020. (*Id.*) Plaintiff's claim was initially denied on April 8, 2020, and again upon reconsideration on August 29, 2020. (Doc. 11-3 at 14). Plaintiff filed a request for a hearing before an ALJ, which was held via telephone on February 16, 2022. (*Id.*) The ALJ issued an unfavorable decision on April 18, 2022. (Doc. 15 at 2). In her decision, the ALJ found that based on Plaintiff's September 19, 2019, social security application, Plaintiff had not been disabled—as defined in the Social Security Act—from November 5, 2017, through December 31, 2020, the date last insured. (Doc. 11-3 at 28). This decision became final when the Social Security Administration Appeals Council denied review on November 4, 2022. (Doc. 15 at 2). Plaintiff then sought review in this Court. (Doc. 1).

### B.   The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2).

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of

proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both (1) "substantial," involving "significant physical or mental activities," and (2) "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

At the third step, the ALJ determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. *Id.* If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's residual functional capacity ("RFC") is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At the fourth step, the ALJ determines whether, despite the impairments, the

claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At the fifth and final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1520c, 404.1529, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

**C.    The ALJ's Application of the Five-Step Evaluation Process**

Here, at step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of November 5, 2017, through her date last insured of December 31, 2020. (Doc. 11-3 at 16). More specifically, the ALJ noted inconsistencies in the record regarding Plaintiff's work activity after the alleged onset date. (*Id.* at 17). The ALJ presumed that Plaintiff's earnings were below the necessary level to constitute substantial gainful activity even though it "ha[d] not been confirmed with documentation." (*Id.*)

At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: borderline personality disorder, cannabis use disorder, major depressive disorder, bipolar disorder, anxiety disorder, post-traumatic stress disorder, shoulder impingement, high frequency sensorineural hearing loss, and diverticular disease. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.* at 17). At this step, the ALJ evaluated the following potential listed impairments: 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), 12.15 (trauma- and stressor-related disorders). (*Id.* at 18). The ALJ found Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except the claimant could lift and carry fifty pounds occasionally and twenty-five pounds frequently. The claimant could stand and or walk for six hours and sit for six hours with normal breaks during an eight-hour day. She could occasionally climb and crawl and frequently balance, stoop, kneel, and crouch. The claimant could frequently engage in overhead reaching with the right upper extremity. She should not have had concentrated exposure to extreme cold. She should not have been exposed to loud noise or hazards such as moving machinery and unprotected heights. The claimant was able to perform simple routine work involving simple work-related decisions and simple instructions and was able to perform work not involving public contact and up to occasional contact with coworkers.

(*Id.* at 20).

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work as a babysitter/child monitor based on testimony from the vocational expert. (*Id.* at 27).

At step five, as an alternative to Plaintiff returning to past relevant work, the ALJ determined that Plaintiff could make a successful adjustment to other work. (*Id.* at 27–28). In making this determination, the ALJ consulted a vocational expert because Plaintiff's "ability to perform all or substantially all of the requirements of [medium work] was impeded by additional limitations." (*Id.* at 28). The vocational expert testified that given Plaintiff's age, education, work experience, and RFC there were jobs "that existed in significant numbers in the national economy that the claimant could have performed," such as working as a cook helper, laundry worker, or hand packager. (*Id.* at 27). Accordingly, the ALJ determined that Plaintiff was not disabled—as defined in the Social Security Act—from the alleged onset date through the date last insured. (*Id.*)

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Revels*, 874 F.3d at 654 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises two claims of error in the ALJ's decision: (1) the ALJ erred in rejecting Plaintiff's symptom testimony; and (2) the ALJ erred in rejecting portions of Dr. Coelho's medical opinion. (Doc. 15 at 1–2).

### A. Plaintiff's Symptom Testimony

Plaintiff argues the ALJ erred by failing to provide "specific, clear, and convincing

reasons supported by substantial evidence" for rejecting Plaintiff's symptom testimony. (*Id.* at 18–19). The ALJ determined there was

> no question the [Plaintiff] has a history of mental health treatment and marijuana use, which result in work related limitations. However, while [Plaintiff] reportedly engaged in self harming and cutting behaviors, the record does not establish these behaviors resulted in an inability to perform all work. The [Plaintiff] has reported activities of daily living which were not as limited as would be expected given her reports of disabling symptoms and limitations.

(Doc. 11-3 at 25).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain her credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

In assessing credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Here, the ALJ did not find that Plaintiff was malingering and concluded that her medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Doc. 11-3 at 22). Because the ALJ did not find that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting her symptom testimony.

Plaintiff argues the ALJ "failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] symptom testimony." (Doc. 15 at 20). Plaintiff also argues the ALJ was "not specific and presented no discernable path from specific activities of daily living to specific inconsistencies within [Plaintiff's] symptom testimony." (*Id.* at 21). Finally, Plaintiff asserts that the ALJ failed to reconcile observations that were "supportive of and consistent with [Plaintiff's] symptom testimony." (*Id.* at 20).

Defendant responds that the ALJ reasonably discounted Plaintiff's symptom testimony based on "numerous inconsistencies between her claims and other evidence in the record." (Doc. 17 at 2). Defendant points to Plaintiff's inconsistent and contradictory claims regarding reasons for unemployment referenced by the ALJ as valid reasons to reject Plaintiff's symptom testimony. (*Id.* at 2–3). Further, Defendant asserts the ALJ properly found that Plaintiff's "other activities conflicted with her allegations" in determining the "degree of limitation Plaintiff alleged." (*Id.* at 3).

Here, the ALJ took into consideration the inconsistencies in Plaintiff's testimony regarding the length of time Plaintiff undertook running an internet business. (Doc 11-3 at 17, 25). The ALJ explained:

> Although the claimant testified she sold clothes online for only a few months, this short time period is not consistent with the information she provided to her treating mental health provider. For example, on November 3, 2017, she stated she had an online business for one year (Exhibit 19F/9). In an SMI evaluation, another individual stated she worked with the claimant and her business this past year and she was on her team (Exhibit 2F/3). The claimant reported she had been working part time by selling clothes from home via Lularoe and she had been doing it for a year (Exhibit 2F/23). On January 7, 2018, the claimant reported she had been working a year with her business and the money earned went back into the business to buy clothes (Exhibit 19F/9). On October 31, 2018, she reported difficulty doing her job selling clothes over the phone (Exhibit 12F/17). Even as late as January 2019, she reported she was interested in growing her business, which suggests her business remained open and she continued to be self employed (Exhibit 19F/14).

(Doc. 11-3 at 17).

The ALJ also found that Plaintiff "reported activities of daily living which were not as limited as would be expected given her reports of disabling symptoms and limitations." (*Id.* at 25). The ALJ considered Plaintiff's ability to care "for young children including a child with special needs." (*Id.*) Further, the ALJ pointed out that Plaintiff was running an internet business for at least some time during this period, dated online, performed household chores, exercised regularly, and traveled. (*Id.*) While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted), daily activities undertaken by the claimant can be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment, even when those activities suggest some difficulty functioning. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). Thus, the Court finds that even though Plaintiff stated that she had difficulty functioning, the ALJ properly discounted her testimony to the extent that her daily activities were inconsistent with an inability to work in any capacity. *See, e.g.*, *Curry v. Sullivan*, 925 F.2d 1127, 1130

(9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity." (citations omitted)).

The Court next addresses Plaintiff's argument that the ALJ failed to reconcile observations that were "supportive of and consistent with [Plaintiff's] symptom testimony." (Doc. 15 at 20). The ALJ specifically states "[the Plaintiff's] impairments result in work related limitations, but do not support a finding she had been precluded from all work." (Doc. 11-3 at 22). The ALJ also found that while Plaintiff "reportedly engaged in self harming and cutting behaviors, the record does not establish these behaviors resulted in an inability to perform all work." (*Id.* at 25). Here, the ALJ discussed Plaintiff's previous hospitalizations and treatment records for the entire period in question. (*Id.* at 22–25). The ALJ specifically considered Plaintiff's hospitalizations in 2017 and 2019, "increased symptoms after signing divorce papers", and treatment records of "intermittent cutting behaviors." (*Id.* at 25). This acknowledgment was further reflected in the more limited RFC found by the ALJ. (*Id.* at 20). The RFC includes limitations that Plaintiff "should not be exposed to loud noise or hazards" as well as that Plaintiff "was able to perform simple routine work involving simple work-related decisions and simple instructions and was able to perform work not involving public contact and up to occasional contact with coworkers." (*Id.*) Accordingly, the Court finds the ALJ gave clear and convincing reasons to discount Plaintiff's subjective symptom testimony, and the ALJ supported these reasons with substantial evidence.

### B.    Dr. Coelho's Medical Opinion

Plaintiff argues the ALJ improperly rejected the "disabling findings" of Dr. Coelho's assessment. (Doc. 15 at 10). Plaintiff takes issue with the way the ALJ determined Dr. Coelho's opinion to be partially consistent with the record and thus asserts that the rejected portions are unsupported by substantial evidence. (*Id.*) Specifically, Plaintiff first states that the ALJ's conclusion finding Plaintiff "'demonstrate[s] the ability to maintain

persistence and pace' is unfounded." (*Id.* at 13). Plaintiff also argues the ALJ's finding that there was no evidence to suggest Plaintiff would be "'unable to deal with the stress and pressure of unskilled work' is not supported by [the] record." (*Id.* at 16). Finally, Plaintiff argues the ALJ failed to "adequately discuss the consistency and supportability factors" when rejecting portions Dr. Coelho's opinion.[2] (*Id.* at 18).

Defendant responds that the ALJ "reasonably assessed the persuasiveness of the medical opinions based on their supportability and consistency with the record" and supported her findings with substantial evidence. (Doc. 17 at 4). Defendant first points to inconsistencies in the record the ALJ relied on when finding Dr. Coelho's opinion less persuasive regarding Plaintiff's ability to maintain persistence and pace. (*Id.* at 4–5). Defendant also argues the ALJ's finding of no evidence to suggest that Plaintiff would be unable to deal with the stress and pressure of unskilled work was properly discounted. (*Id.* at 6). Defendant supports this argument by pointing out Dr. Coelho's opinion that Plaintiff "'would struggle to handle stress and pressure in the workplace'" was not supported by objective medical evidence. (*Id.* at 6).

As of March 27, 2017, the SSA modified the rules for evaluating opinion evidence. *See* 20 C.F.R. §§ 404.1520c, 416.920c. According to the new regulations, the ALJ should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, an ALJ considers the following factors when considering a particular medical opinion in a case: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* §§ 404.1520c(c)(1)–(5),

---

[2] Plaintiff additionally contends the purported failure by the ALJ to discuss these factors does "not support elevation of the nonexamining reviewers' opinions over Dr. Coelho's opinion." (Doc. 15 at 18). The Court recognizes and assumes that Plaintiff is referring to Dr. Alan Entin's opinion that Plaintiff could perform simple tasks. The Court rejects Plaintiff's argument which suggests application of the standard for evaluating medical opinions prior to March 27, 2017. Under the revised rules, the ALJ is not required to defer to or assign each medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

416.920c(c)(1)–(5). The most important of these factors are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). The ALJ should "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in [a] determination or decision." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ will "articulate how [he or she] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1), 416.920c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

The Court is not swayed by Plaintiff's contention that the ALJ rejected portions of Dr. Coelho's without substantial evidence. The Court will first address Plaintiff's argument that the ALJ's finding that Plaintiff "'demonstrate[s] the ability to maintain persistence and pace' is unfounded." (Doc. 15 at 13). The ALJ explained her finding as follows:

> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant reported to the Administration she had a short attention span (Exhibit 4E). However, she continued to engage in activities that demonstrate the ability to maintain concentration, persistence and pace. As discussed elsewhere in this decision, she had an online business for an undetermined time period after the alleged onset date. On December 15, 2017, she reported her favorite activity was taking photos of the clothes she was selling in her online business (Exhibit 19F/7). The claimant denied problems with preparing food, mobility, housework, shopping, managing money and taking medication (Exhibit 2F). She also reported for leisure she liked to study, so she picked a topic and studied it (Id.). The claimant has reported she was doing yoga, working out and lifting weights (Exhibit 19F/70, 19F/84, 19F/101). She also stated she was dating online, working out more, going on bike rides and doing dance videos on U Tube one or two times per day

>(Exhibit 22F/6). The claimant home schooled her children during the pandemic and has reported doing yardwork and keeping busy (Exhibits 22F and 32F/82). A friend reported the claimant spent time writing a book, caring for a child with special needs and that she transported her children to and from school (Exhibit 10E). Based on the weight of the evidence, the undersigned finds the claimant had no more than a moderate limitation in concentrating, persisting or maintaining pace.

(Doc. 11-3 at 19). The ALJ pointed to inconsistencies between the record and Dr. Coelho's opinion that Plaintiff "may have issues sustaining persistence and completing tasks if she lost interest or motivation . . . ." (*Id.* at 26). These conflicts between objective medical evidence and Dr. Coelho's opinion are requisite substantial evidence to find Dr. Coelho's opinions unpersuasive. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion.").

Dr. Coelho "opined [Plaintiff] would struggle with stress and pressure in the workplace." (Doc. 11-3 at 26). The ALJ found there was "no evidence present to suggest [Plaintiff] would be unable to deal with the stress and pressure of unskilled work." (*Doc 11-3 at 26).* The Court disagrees with Plaintiff's contention that this finding is unsupported by the record. (Doc. 15 at 16). The ALJ points out that Plaintiff "cared for children, [ran] an internet business, spent time writing a book, performed household chores and dated online." (Doc. 11-3 at 26). Earlier in the decision the ALJ explained "[Plaintiff] has been caring for young children including a child with special needs. Caring for young children can be quite demanding both physically and emotionally." (*Id.* at 25). The ALJ further noted that Plaintiff "was self employed with an Internet business for an uncertain time period after the alleged onset date. She also participated in online dating, performed household chores, exercised regularly and traveled." (*Id.*) The ALJ also considered Plaintiff's "increased symptoms in connection with her divorce and reported relationship

problems" but found they would not "result in limitations greater than found in this decision." (*Id.* at 26). Again, in a previous section, the ALJ explained:

> [Plaintiff] was hospitalized in November 2017 after being off medication for six months. She continued with regular mental health treatment and was hospitalized again two years later in November 2019 and December 2019 as discussed above. She reported increased symptoms after signing divorce papers, but even by December 2019, during her intake assessment, she appeared incongruent and laughed while reporting she was suicidal. While treatment records do note intermittent cutting behaviors, the record does not establish this would have prevented her from engaging in all work related activity for any 12 month time period prior the expiration of her date last insured.

(*Id.* at 25). The Court finds substantial evidence supports the ALJ's finding that this portion of Dr. Coelho's opinion was not persuasive. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

As for Plaintiff's argument that the ALJ failed to "adequately discuss the consistency and supportability factors for rejecting portions Dr. Coelho's opinion," the Court disagrees. (Doc. 15 at 18). Here, the ALJ first acknowledges that Dr. Coelho's opinion is "partially consistent with the record." (Doc. 11-3 at 26). As discussed in detail above, the ALJ found that Dr. Coelho's opinion that Plaintiff may "have issues in sustaining persistence and completing tasks if she lost interest or motivation [was] not consistent with the record." (*Id.*) The ALJ discussed that "the [Plaintiff] maintained an active lifestyle with many reported activities which demonstrate the ability to maintain persistence and pace." (*Id.*) Additionally, the ALJ stated that Plaintiff "cared for children, [ran] an internet business, spent time writing a book, performed household chores and dated online." (*Id.*) The ALJ also found this portion of Dr. Coelho's opinion inconsistent with the record. (*Id.*) The inconsistencies between the record and Dr. Coelho's opinion relied upon by the ALJ throughout the decision constitute substantial evidence to support the ALJ's consistency analysis in finding potions of Dr. Coelho's opinions unpersuasive. *Darden v. Saul*, 855 Fed. Appx. 352, 354 (9th Cir. 2021) ("Inconsistency between the opinion of a treating physician and self-reported daily activities or the physician's own

records is a specific and legitimate reason for discounting a treating source opinion."); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 n.4 (9th Cir. 2023) (citations omitted) ("The ALJ explicitly discussed the supportability and consistency of the opinions of [the doctors] by identifying medical sources and records relevant to her analysis."). Viewing the ALJ's supportability and consistency analysis as a whole, the Court finds there was substantial evidence to support the ALJ finding portions of Dr. Coelho's opinions unpersuasive.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 6th day of March, 2024.

James A. Teilborg
Senior United States District Judge